# United States District Court

FILED

JUN 27 2006

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

~~CLERK~~
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

In the Matter of the Search of
(Name, address or brief deposition of person, property or premises to be searched)

A RESIDENCE AND ALL OUTBUILDINGS AND VEHICLES LOCATED AT 2627 LARK DRIVE, MONTGOMERY, AL, MORE PARTICULARLY DESCRIBED IN ATTACHMENT A.

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER: 2:06mj65-DRB

I __NEILL THOMPSON_____ being duly sworn depose and say:

I am a(n) __SPECIAL AGENT_____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

SEE ATTACHMENT A

in the _____MIDDLE_____ District of _____ALABAMA_____
there is now concealed a certain person or property, namely (describe the person or property to be seized)

SEE ATTACHMENT B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
EVIDENCE OF THE COMMISION OF A CRIMINAL OFFENSE

concerning a violation of Title __21__ United States Code, Section(s) __841(A)(1)__
The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part thereof:   ☒ Yes   ☐ No

_____/s/ Neill Thompson_____
Signature of Affiant

Sworn to before me, and subscribed in my presence,

_June 16, 2006_____ at   MONTGOMERY, AL
Date                                              City and State

_/s/_____                  _/s/_____
U.S. Magistrate Judge                         Signature of Judicial Officer
Name and Title of Judicial Officer

# AFFIDAVIT

I, Neill Thompson, having appeared before the undersigned United States Magistrate, and having been duly sworn, deposes and states:

This affidavit, which is based upon personal knowledge and knowledge obtained from other law enforcement officers, is submitted in support of an application for warrants to search the following properties and persons:

2627 Lark Drive, Montgomery, Alabama

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. I am empowered by law to conduct investigations of and to make arrests for the offenses enumerated in Section 2515, Title 18, United States Code.

2. Since June 1998 I have been so employed as a Special Agent of the Drug Enforcement Administration (DEA). Prior to that time I was employed as a Police Officer with the Tuscaloosa, Alabama Police Department for approximately 12 years. I have participated in investigations involving organized crime and narcotics activities. I have received specialized training in identifying and investigating narcotics distribution enterprises and their related criminal activities, including monetary and asset laundering. I have gained investigative specialization in the area of methamphetamine, cocaine, marijuana, and/or poly-drug conspiracies. I have also written and executed numerous search and seizure warrants for narcotics, dangerous drugs, records, books and proceeds derived as a result of this illegal activity. Presently, I am assigned to the DEA office in Montgomery, Alabama.

3. Since January 2005 I have been involved in an investigation centering on the drug trafficking activities of Tavaris MABSON and others in the Montgomery area. The investigation began after a federal defendant proffered that he had supplied MABSON for approximately two years during 2003 and 2004 with several hundred pounds of marijuana at the rate of approximately 50 pounds per month during that period. MABSON is well known by narcotics investigators in the Montgomery area as one who routinely distributes marijuana and cocaine to other lower level distributors. MABSON also has at least two previous felony convictions for illegal drug trafficking and possession.

1

4. In January 2006 a Confidential Source (CS), hereafter referred to as CS # 1, established at the Montgomery DEA Office provided information regarding MABSON'S organization. The CS stated that MABSON utilized a residence located at 2627 Lark Drive, Montgomery, Alabama (the residence) to distribute marijuana and cocaine. CS # 1 stated that MABSON did not live at the residence, but brought illegal drugs to the residence where they were sold by him and members of his organization. CS # 1 has provided information to me for the past twelve months and the information has proven to be true, correct, and reliable. As a result of the CS' information I have successfully seized illegal drugs and made arrests on subjects who distribute those drugs.

5. In February 2006 CS # 1 participated in two controlled purchases of cocaine and "crack" cocaine from the residence. On the first transaction CS # 1 purchased approximately one ounce of cocaine from Terrence HOUSTON. On the second transaction, approximately one week later, the CS purchased approximately one ounce of cocaine from Kendrick HOUSTON. SA Thompson and others continued to receive information regarding the residence and on April 19, 2006 CS # 1 went back to the residence and purchased approximately 7 grams of "crack" cocaine from Tavaris MABSON. During the purchase MABSON told the CS he had "all the weed you want for $550.00 a pound".

6. During this same time period I received information from another reliable Confidential Source (CS # 2), who stated that Tavaris MABSON was obtaining large amounts of illegal drugs from a Hispanic source of supply. CS # 2 has provided information to me for approximately 5 months and the information provided has proven to be true, correct, and reliable. I have initiated investigations based on CS # 2's information and have seized large amounts of illegal drugs and arrested individuals for Possession and Trafficking of the illegal drugs.

7. On May 5, 2006, as a result of CS # 2's information, law enforcement was able to seize approximately 240 pounds of marijuana and arrest MABSON and others for Trafficking Marijuana. The investigation also resulted in the execution of a state search warrant at a residence located at 2000 Green Acres Drive, Montgomery, Alabama. Part of the marijuana (approximately 35 pounds) was found in the trunk of a Chevrolet Caprice that MABSON is known to utilize. The Caprice bears Alabama license plate SOJA. Alabama license plate SOJA is assigned to a 1993 Chevrolet Caprice registered to Kendrick HOUSTON at 2627 Lark Drive, Montgomery, Alabama.

8. When MABSON was arrested on May 5, 2006 he provided 2627 Lark Drive as his residence. Additionally, MABSON provided the residence as his address when he obtained an Alabama driver's license on April 9, 2003. MABSON was subsequently released on bond and is currently not incarcerated.

9. In June 2006 I received information from another reliable Confidential Source (CS # 3). CS # 3 stated that MABSON continues to distribute illegal drugs and frequents the residence located at 2627 Lark Drive several times a day. CS # 3 believes that MABSON goes to the residence to supply those inside that are distributing drugs. CS # 3 observed MABSON at the residence as late as June 15, 2006. CS # 3 has provided information to me for approximately 3 months and the information provided has proven to be true, correct, and reliable. I have conducted investigations based on CS # 3's information and have found the information provided to be true, correct, and reliable.

Based on my training experience, previously recited, and my participation in numerous investigations involving narcotics importation and distribution organizations and in financial investigations involving large amounts of controlled substances, currency and other monetary instruments, I am aware of the following;

    a. that large-scale narcotics traffickers commonly maintain on hand large amounts of U.S. Currency in order to maintain and finance their ongoing narcotics business;

    b. that individuals engaged in narcotics trafficking and/or money laundering commonly maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other paper relating to the illegal distribution of controlled substances; that these same individuals commonly "front" (provide on consignment) narcotics to their clients; that the aforementioned books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are maintained where the narcotics traffickers have ready access to them;

    c. narcotics traffickers and those engaged in the laundering of money commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the trafficking organization;

    d. that, in order to accomplish this concealment, narcotics traffickers frequently build "stash" places within their residences or businesses. That there are a number of publications available instructing where and how to build "stash" places. Copies of these types of publications have been found in the residences and businesses of narcotics traffickers;

    e. that it is common for persons involved in large-scale narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letter of credit, money orders, bank drafts, cashiers checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses or other locations which they maintain dominion and control over;

3

f.     that large scale narcotics traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described above

g. that the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and narcotics transactions;

h. that narcotics traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies. In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms. Retained copies of these returns are commonly kept by the traffickers in their residences and businesses.

i. Drug traffickers commonly maintain in their wallet, purse or pockets, telephone numbers of drug associates, safe deposit box keys, cash receipts of expenditures or other documents such as business cards, providing leads to the disposition of drug proceeds. Therefore, it is requested that all aforementioned persons be searched for evidence of drug trafficking.

j. Drug traffickers are also known to use their vehicles to transport drugs, store drug proceeds and store records relating to their drug activities, such as gasoline tickets revealing out of town trips. Therefore, it is requested that all vehicles on the aforementioned premises be searched for evidence of drug trafficking.

k. That as an experienced agent, your affiant states that controlled substances can be sold in various quantities which could be small in size. Your affidavit states that because these items are very small, they can easily be hidden on one's person, on one's residence in closed or locked containers, such as file cabinets, safes, vaults, drawers, luggage, briefcases, valises, boxes, cans, bags, purses, and any other closed or locked hiding places. Drug dealers conceal their narcotics in these places as previously described in order to prevent drug "rip-offs" by drug dealers and users and in order to avoid detection and seizure by law enforcement officers.

l. That it has been your affiant's experience that such items as utility bills, and/or rent receipts are essential in the investigation of narcotics violations in that they tend to establish control of the residence.

4

m. That it has also been your affiant's experience that persons who deal in controlled substances will quite often "front" drugs to buyers and keep records of these in order to keep track of who owes what. These records are commonly referred to as "totes" or "ledgers" and will quite often be found in one's residence and on one's person. Records of this nature are important to the investigation in that they tend to show the intent of the person in possession of these drugs.

n. That it has been your affiant's experience in searching numerous residences for drug violations that it is not uncommon to find such items as scales and/or plastic baggies and/or cigarette rolling papers or other drug paraphernalia, and that these items are essential in the investigations of drug violations in that they tend to establish the intent of possession for sale.

o. That it has also been your affiant's experience that drug manufacturers and traffickers commonly have in their possession, that is on their person, at their residence, and/or their businesses, firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure drug trafficker's property or enterprise.

p. That it has also been your affiant's experience during numerous searches of residences and persons trafficking in controlled substances, that your affiant and other law enforcement agents have on numerous occasions found photographs and videotapes of the residents of said properties and their associates who were involved with them in criminal activities. Drug traffickers frequently take or cause to be taken photographs or videotapes of themselves, their associates, their property, and their product and that these traffickers usually maintain these photos and tapes in their possession.

q. That it has also been your affiant's experience that drug traffickers often purchase and/or title assets in fictitious names, aliases, or in the names of their relatives, associates or business entities, to avoid detection and seizure of these assets by government agencies. Also, that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

r. That it has also been your affiant's experience that it is common for drug traffickers to use cellular telephones because they are portable and often more difficult to investigate.

Based upon the above described facts, information, observations, and training I believe that probable cause exists for the issuance of a search warrant for 2627 Lark Drive, Montgomery, Alabama. I believe that a search of said properties will reveal evidence relating to the Conspiracy to Distribute a Controlled Substance, the Distribution of a Controlled Substance, and Possession With the Intent to Distribute a Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

# ATTACHMENT A

2627 Lark Drive is described as an off-white single story wood frame residence, located on Lark Drive, in Montgomery, Alabama. The residence has a front door and two windows to the right of the door. All the doors and windows are protected by burglar bars. The number "2627" is displayed to the left of the door.

_[signature]_
Neill Thompson
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this ___ day of _____, 2006, by Neill Thompson, Special Agent, Drug Enforcement Administration.

_[signature]_
UNITED STATES MAGISTRATE JUDGE

6

## ATTACHMENT B

### PROPERTY TO BE SEIZED

(1) Books, records, ledgers, and/or writings which record the receipt and/or distribution of controlled substances including cocaine, crack cocaine as well as any other memoranda relating to the transportation, ordering, purchase, delivery and/or distribution of controlled substances, which writings and records are contraband as well as evidence;

(2) Papers, tickets, notes, schedules, receipts, and other writings and objects including but not limited to gasoline receipts, air travel vouchers, and motel/hotel embossed articles, which do or tend to establish domestic and/or interstate travel in interstate commerce;

(3) Addresses and/or telephone books and papers and other writings reflecting names, addresses, and/or telephone numbers as well as bills and paid receipts reflecting telephone toll records, any and all of which reflect the names, addresses, and telephone numbers of aliases or code names of both known and unknown co-conspirators in the above-described criminal activity, as well as other indicia of telephone usage and service including pay telephone usage which indicia includes, but is not limited to, telephone credit cards, large amounts of nickel, dime and/or quarter currency, and telephone paging devices which are carried on or about the persons to receive incoming notice or messages and which are activated by telephone usage;

(4) Currency of the United States including paper and coin currency, also precious metals, jewelry, financial instruments, including but not limited to, negotiable commercial paper, and currency obtained, connected with and/or possessed to facilitate the financing of illicit drug trafficking;

(5) Photographs and videotapes, in particular, photographs or videotapes of co-

conspirators, of assets, and/or of controlled substances, in particular, methamphetamine;

(6) Safes, strong boxes, and/or other secure receptacles for the maintenance of valuable items and/or important documents including books, records, and other writings as well as United States currency as described above, and any keys or other evidence of the existence and usage of any lockers, safety deposit boxes or other secure receptacles situated elsewhere than at defendant property;

(7) Articles of false identification;

(8) Radio electronic equipment including but not limited to transceivers, receivers, scanners, antennae, RF detectors, walkie talkies, wireless transmitters as well as other electronics which are used ancillary to such equipment, including but not limited to, electrical calibration equipment, meters and test equipment;

(9) Computers or other electronic devices which are capable of storing information, including, but not limited to computers, lap tops, floppy disks, cd roms, zip disks, hard drives, and personal data assistants (PDA).

(10) Firearms;

(11) Controlled substances, in particular, cocaine or crack cocaine;

(12) Paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including but not limited to, scales, bags, pipes, and duct tape;

(13) Any and all other material evidence of violations of Title 21, United States Code, Sections 848, 853, 841 (a) (1), 843 (b), 846, and 881, together with fruits, instrumentalities and evidence of crimes at this time unknown.